**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANCES L. WALL,**

                                        **Plaintiff,**

        **-against-**                                **07-CV-350**

**THE TOWN OF NISKAYUNA,**

                                **Defendant.**


_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

### I.    INTRODUCTION

        Plaintiff commenced this action asserting claims of employment discrimination

under Title VII, 42 U.S.C § 2000e, _et seq_. ("Title VII"), and the New York State Human

Rights Law, N. Y.  Exec. L. § 292 _et seq_. ("NYSDHR").  The claims sound in theories of

disparate treatment (failure to promote), hostile work environment, and retaliation.  See 2nd

Amed. Compl. [dkt. # 25].  Defendant moves pursuant to Fed. R. Civ. P.  56 seeking

summary judgment dismissing Plaintiff's action in its entirety.  Plaintiff has opposed the

motion.  For the reasons that follow, Defendant's motion is granted in part and denied in

part.

### II.   STANDARD OF REVIEW

        The parties have evinced their understanding of the well-settled standards for

1

deciding summary judgment motions in Title VII and other discrimination actions,[1] including application of the three-part burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Fed. R. Civ. P. 56(c); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); Bracci v. N.Y.S. Dept. of Correctional Services, 2005 WL 2437029, at * 1 (N.D.N.Y. Sept. 30, 2005) (McAvoy, S.J.); Levitant v. City of New York Human Resources Admin., 2008 WL 5273992, at *6 - *7 (E.D.N.Y. Dec.18, 2008).  Therefore, these standards will not be repeated.

Suffice it to say that where, as here, the intent of one party is in question but there is no direct evidence of discrimination, the Court must carefully examine the reasonable inferences that could be drawn from the totality of the circumstantial evidence and be cautious about granting summary judgment. Schiano v. Quality Payroll Sys., 445 F.3d 597, 603 (2d Cir. 2006).  Nonetheless, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); see Schiano, 445 F.3d at 603 ("[S]ummary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact.")(quoting McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir.1997)).

---

[1] Unless stated otherwise, the same standards apply for resolving employment discrimination claims under Title VII and the NYHRL. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)(New York courts "require the same standard of proof for claims brought under section 296 of the Human Rights Law as for those brought under Title VII."); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996)(applying the same standard to Title VII & NYHRL);; EEOC v. Rotary Corp., 297 F. Supp.2d 643, 661 (N.D.N.Y. 2003)("Title VII and the New York State Human Rights Law employ an identical standard to determine if the substantive elements of a hostile work environment [] claim have been proven.").

### III.   FACTS [2]

Unless indicated otherwise, the following facts are taken from the parties' L.R. 7.1(a)(3) Statements of Material Facts.[3]  The Court views all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

### a.   Gender-Based Non-Promotion Claims

Plaintiff has been a member of the Town of Niskayuna Police Department ("Department") since September 23, 1985 and has held the rank of sergeant since January 1993.  At all relevant times, she was one of two female officers in the Department of approximately 30 officers.

In December of 1999, two lieutenant positions opened in the Department. 2nd Amed. Compl. ¶ 15.  Plaintiff, along with several other Department sergeants, applied for the positions.  Then-Chief of Police Mark Sollohub recommended to the Town Board that Lewis Moskowitz and Thomas Constantine be provisionally appointed to these positions.

---

[2] It is extremely difficult to ascertain the full extent of the facts in this case and determine their chronology.  This difficulty is due, in large part, to the fact that Plaintiff neither submits her own affidavit setting forth the facts of the case, nor sets forth a rendition of the facts in her Memorandum of Law in Opposition to Summary Judgment.  Rather, Plaintiff relies on her response to Defendant's Local Rule 7.1 Statement of Material Facts where she sets forth facts in hodgepodge fashion, seemingly asking the Court to search the record to fill in the voids.  The Court declines this invitation. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree . . . that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(Local rules requiring Statements of Material Facts are "designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts. . . . While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.").

[3] On this motion, the Court accepts as true those facts asserted in Statement of Material Facts that are admitted by the opposing party, or that are supported by admissible evidence and not properly denied. See L.R. 7.1(a)(3)("Each denial shall set forth a specific citation to the record where the factual issue arises.").

Id. ¶ 16; see Constantine Aff.  ¶ 2.  A provisional appointment meant that the appointees would have to take and pass a civil service examination in the future to permanently retain their positions.  Constantine Aff.  ¶ 2.  The Town Board followed the Chief's recommendation.  Plaintiff was passed over for this promotion despite having seniority over both Moskowitz and Constantine, leading Plaintiff to conclude that the Chief's recommendation was gender motivated.  2nd Amed. Compl. ¶ 18.

In 2002, a lieutenant's civil service examination was offered by the Schenectady County Civil Service Commission.  Constantine and Moskowitz, who held the lieutenant's positions provisionally, took the examination.  Plaintiff and Department Sergeants John Lubrant and Stanley Firminski also took the examination.  Of the five, four passed the examination and, based on their examination scores, were ranked as follows: 1. Lubrant; 2. Firminski;  3. Plaintiff;  4. Moskowitz.  2nd Amed. Compl. ¶ 20.  The Chief  recommended that Moskowitz and Lubrant be appointed to the positions. Id.; Constantine Aff.  ¶ 3.  The Town Board followed the recommendation.  Citing the fact that she scored higher than Moskowitz on the examination, Plaintiff contends that she was passed over for this promotion because of her gender.

Another lieutenant's civil service examination was given on October 24, 2004.  2nd Amed. Compl. ¶ 22.  Plaintiff and Constantine were the only two Department sergeants to take the examination.  In January 2005,  Chief Sollohub retired and Moskowitz became the Chief of Police, see Plt. L. R. 7.1 Stat., ¶ 9, opening a lieutenant's position in the Department.   On June 3, 2005, the Schenectady County Civil Service Commission published the results of the October 24, 2004 lieutenant's civil service examination.  Plaintiff was ranked number one and Constantine was ranked number two. See Def. Ex. L.

4

Moskowitz did not feel that either Plaintiff or Constantine had the leadership qualities necessary to properly fulfill the lieutenant's position, and he expressed a desire to appoint someone, like Firminski, who the Chief felt had strong leadership qualities. Lubrant Dep. pp.84-87; see Plt. L. R. 7.1 Stat., ¶ 2(b).[4]   As explained by Moskowitz:

> The lieutenant's job was a leadership role. I didn't want someone who had to show up at the scene of a major incident and couldn't assume the leadership role that was needed. [I wanted] [s]omeone who could go to a scene and take command of a situation. And direct the resources that needed to be there, to get them there, to direct them. . .  They had to know how to take control of the situation and direct the resources toward it.

Id. pp 129, 130.

Moskowitz decided that, pursuant to New York Civil Service Law § 61, he would open up the position for a provisional appointment instead of using the civil service list.[5] He invited all four Department sergeants - Plaintiff, Constantine, Ed Kelly, and Fiminski - to submit resumes and attend interviews. See Second Amend. Compl. ¶ 24.   All four applied for the position and were interviewed.  After the interviews, Moskowitz was of the opinion that Fiminski had the right leadership ability for the position and was the best person to help move the Department in the direction Moskowitz wanted it to go. See

---

[4]Plaintiff asserts in her Local Rule Statement that

[t]he Chief had indicated before the interviews that he was not satisfied with appointing either Sgt. Wall, who was #1 on the list, or Sgt. Constantine #2 (pp. 86 Deposition of John Lubrant). Even before the interviews, the Chief had indicated to Lt. Lubrant that Stan Firminski was his "man" if he could go outside the list (pp. 86 Deposition of John Lubrant).

Plt. L. R. 7.1 Stat., ¶ 2(b).  However, Lubrant's deposition does not indicate that Moskowitz described Firminski as "his man" or that he used any other gender specific term.  Rather, Lubrant testified that Moskowitz had expressed a desire to look outside the civil service list because he wanted someone with "stronger leadership traits" and he "may have mentioned Stan" Firminski as an appropriate candidate. Lubrant Dep. pp. 85-86.

[5]Under § 61 of the New York Civil Service Law, if there are fewer than three people on a civil service list, an agency can make provisional appointments outside of the list.

5

Moskowitz Dep., pp.  117, 129, 130.  Moskowitz recommended to the Town Board that

Fiminski be provisionally promoted to lieutenant.  The Town Board followed Moskowitz's

recommendation and promoted Fiminski on September 27, 2005.

Plaintiff contends that Moskowitz's decision to recommend Firminski for promotion,

instead of her, was a gender-based determination.  In reaching this conclusion, Plaintiff

asserts that she and Firminski were the only two viable candidates for the position.  She

excludes Constantine as a viable candidate because he was, at least in Plaintiff and

Constantine's opinions, "a threat" to taking over the Chief's position. See  Plt. L. R. 7.1

Stat., § 2(e);[6]  Constantine Aff. ¶ 6 ("I felt the reason Chief Moskowitz would not appoint

me . . .  was that I was a threat to Moskowitz's [*sic*] remaining as Chief.").  Plaintiff asserts

that "Sgt. Ed Kelly was not a viable candidate because, by his own statement, [he] was

considering retiring at that time."  Plt. L. R. 7.1 Stat., § 2(d).

As to Firminski, Plaintiff is of the opinion that he was a not a better candidate than

she because he had a "horrendous disciplinary record" that the Chief either was aware of

and did not tell the Town Board about, or should have been aware of yet failed to

investigate during the interview process.[7]   Nonetheless, Plaintiff acknowledges she has a

---

[6]Plt. L. R. 7.1 Stat., § 2(e) provides:

The Chief couldn't chose to appoint  Sgt. Tom Constantine as a Lieutenant because he was
afraid Constantine would try and springboard from the Lieutenant's position to Chief (pp. 156
& 157 of Moskowitz's deposition).  If Moskowitz appointed Constantine as Lieutenant, then, if
Moskowitz, who was only a Chief, provisionally, at the time he was making these decisions,
didn't pass the Chief's Test, the Board might make Constantine, (who would then be eligible
as a Permanent Lieutenant), the new Chief.  (See Affidavit of Tom Constantine).

[7]According to Plaintiff, Firminski's "horrendous disciplinary record" consisted of the following: [1] In
1997, Firminski had been involved in a domestic dispute with his wife in which they accused each other of
escalating an argument into a physical confrontation.  The incident resulted in no criminal charges. See
Sealed Documents (dkt. # 49); [2]  Firminski "had been brought up and pled 'guilty' to charges in 2000 that he

(continued...)

less assertive, "more laid back" managerial style than Firminski, see Wall Dep.  p.  44-46,[8]

and notes that

> [o]ne of the reasons Chief Moskowitz failed to recommend [her] for
> Lieutenant  was that he had lost some respect for her and felt the men had
> lost some respect for her because one night, off duty, she had pulled up her
> shirt at a bar, and showed her breasts.

Plt. L. R. 7.1 Stat., ¶ 4(f)(citing Moskowitz dep. pp. 198-204).  Plaintiff concludes, however,

that she was passed over for the 2005 promotion because the Chief engaged in sexual

stereotyping.  See Plt.  Mem.  L.  p.  10 ("[T]he Chief was using sexual stereotyping in his

determination of what it takes to be a successful police lieutenant. "); see id.  pp.  11-12

("All these factors would allow a reasonable juror to infer that Moskowitz's motive in not

appointing from the Civil Service List . . . constitute a pretext for what Moskowitz's true

intent was; namely to avoid appointing a woman to the second highest command position

in the department because he didn't believe a woman or a woman's style of law

enforcement could earn the respect of the men in the department.").

### b.    Hostile Work Environment - Sexual Harassment

Plaintiff also asserts that she was subjected to a gender-based hostile work

---

[7](...continued)
had failed to provide leadership and guidance in demonstrating loyalty and dedication to the police
profession."  Plt. L. R. 7.1 Stat., § 3(h).  These charges were based on an incident where Firminski had been
discourteous to the Chief's secretary, and an incident where Firminski "had parked his car so close to a
patrolman on his shift, that if the patrolman tried to drive it away, the car's mirrors would have been
damaged."  Id. § 3 (l).  The charges resulted in the loss of one day's vacation pay; and [3] "Firminski, amongst
other things, regularly and routinely told [a patrolman] he was going to 'put a boot up his ass' and that Sgt.
Firminski had caused [the patrolman] to have a nervous breakdown."  Id. § 3(k).  The conclusion that
Firminski "caused" the patrolman's nervous breakdown is not supported by any evidence other than Plaintiff's
conclusion.

[8] Plaintiff asserts that, except in dangerous situations, she allows her subordinates to "think on their
own" and to "learn by their mistakes," whereas Firminski directs his subordinates "exactly what they are going
to do" such that "[t]he guys don't have to think, they're told exactly what they have to do."  Wall Dep.  p.  44-
46.

environment.  In support of this theory, Plaintiff points to the three above-mentioned

occasions when she was passed over for promotion, and contends that she, and the other

woman officer in the Department, were treated poorly compared to the male officers.  With

regard to her treatment, Plaintiff asserts that

> [a]s far back as 1999 and even earlier, Deputy Chief Darryl Ostrander would
> treat [her] differently then the other male Sergeants. [She] would be called
> into his office on an almost-daily basis to be yelled at about something or
> another.  Ostrander would do this in front of the men at line-up or over the
> open radio band so that everyone would think [she] was always in trouble
> When he had her in his office, Deputy Chief Ostrander would make sexist
> remarks, like "women shouldn't be cops."

Plt. L. R. 7.1 Stat., ¶ 4(l)(1)(citing Wall Dep. pp. 19-28).   Deputy Chief Ostrander retired

on October 18, 2003.  Id. ¶ 8.

Plaintiff also points to other incidents which, she contends, created or fostered a

hostile work environment in the Department.  At some time around 1999, after pulling her

shirt up at a bar and showing her breasts,  Plt. L. R. 7.1 Stat., ¶ 4(f),  "a threatening and

harassing letter was put on [Plaintiff's] car, referring to the incident  . . .  and threatening

to expose this incident to a local newspaper columnist . . .  if [she] complained about not

being promoted from the lieutenant's list."  Plt. L. R. 7.1 Stat., ¶ 4(g); see Plt. L. R. 7.1

Stat., ¶ 4(l)(2)(contending that the letter was placed on her car in 2000).   The letter had

on it a drawing of what could be construed as a pair of breasts.  Plt. L. R. 7.1 Stat., ¶ 11

("[I]n December 1999, [Plaintiff] informed . . .  Chief Sollohub that a note with a crude

drawing of breasts was anonymously placed on Plaintiff's private vehicle.  This was all

done while the promotion exam for Lt. was going on but prior to the choice having been

made.").  Plaintiff complained about the letter to Chief Sollohub but she was never told

what, if anything, was done about it.  Plt. L. R. 7.1 Stat., ¶ 4(g).  Plaintiff believed that

8

either Moskowitz or Constantine had placed the letter on her car, and contends that the situation went unaddressed because the Department had no formal policy for reporting and investigating claims of sexual harassment.

Also in 1999, a picture of a pair of breasts was drawn on the locker of Mary Ann McGovern, the other female officer in the Department.  McGovern intimates that Moskowitz was responsible for the drawing.  <u>See</u> McGovern Aff., ¶ 6.  She bases this conclusion on the fact that Moskowitz knew her locker number because he had followed her into the women's locker room on several prior occasions and, in front of her locker, asked her to show him the color of her bra.  <u>Id.</u>  The drawing was first reported to Constantine, then Moskowitz, and eventually to Chief Sollohub and the Town Supervisor. Plaintiff asserts that there was little done about it and the drawing remained on the locker for a number of years.  <u>See</u> McGovern Aff., ¶ 6(d).  Plaintiff complains that Moskowitz failed to conduct a formal investigation into the source of the drawing, and failed to discipline Constantine who first learned of the drawing but also failed to do anything about it.

Plaintiff also asserts that

[i]n 2001, . . .  Chief Sollohub treated [her] completely differently while she was out on a Worker's Compensation case. [She], unlike any male officer[] who had been off for a Worker's Compensation injury, was directed by the Chief to call in to the Chief each time that she left her house.

<u>Id.</u> ¶ 4(l)(3)(citing Wall Dep. pp. 60-61).

In January 2004,

then-Lieutenant Lewis Moskowitz used profane and humiliating language against Sgt. Wall, as he cursed her out in front of the Chief and several of the department dispatchers.  Moskowitz had never talked to any male member of the department like that and he refused to apologize to [Plaintiff]

9

– even after he was told to do so.

Plt. L. R. 7.1 Stat., ¶ 4(I)(4)(citing Wall Dep. pp. 32-39).  Plaintiff concedes that Moskowitz

"used foul but no gender specific language" during this episode.  Plt. L. R. 7.1 Stat., ¶ 10.

### c. EEOC Charge

On November 16, 2005, Plaintiff filed a charge of discrimination with the EEOC.

The only allegation Plaintiff made was that the Town engaged in gender discrimination on

September 27, 2005 by promoting Fiminski to lieutenant instead of her. See Def. Ex. B

(Charge to EEOC); Plf. Ex. G. (EEOC Intake Questionnaire). In the EEOC charge, Plaintiff

stated that she had scored the highest of two sergeants to take the  lieutenant's civil

service examination; that she interviewed for the position; that the position was given to a

male employee who had not taken the examination; that she was "eligible and equally

qualified for the position;" that she was passed over for similar promotions in 1999 and

2000; and that in 1999, she was "passed over in lieu of two less senior sergeants."  Def.

Ex. B.  Plaintiff makes no mention of a course of harassment at her workplace in either the

EEOC charge or in the "Details of the Complaint" attached to the Intake Questionnaire,

and she does not mark the boxes for "harassment" or "sexual harassment" on the Intake

Questionnaire. Plf. Ex. G.  Rather, Plaintiff writes on the Intake Questionnaire that the

"Date of Harm" was "9-27-05." Id.

The Town of Town of Niskayuna provided a response to the EEOC charge on

December 20, 2005.  Plf. Ex. J.  On September 14, 2006, the EEOC issued a

determination of probable cause, finding that because the Department "has no procedural

guidelines with respect to promotions and thus no safeguards to avert the ever-present

possibility of discriminatory practices," and because the sought-after position was awarded

10

to a male who did not take the civil service test, Plaintiff's "non-selection [was] violative of Title VII."  EEOC Determination, p.  1.   On January 12, 2007, Plaintiff received a notice of right to sue, and she commenced the instant action on April 2, 2007.

### d.   Retaliation

Plaintiff asserts that on May 25, 2007,  the Town retaliated against her by passing her over for promotion to the position of Detective Sergeant.  On this date, Moskowitz designated Sergeant Daniel McManus to the position.  McManus had been a sergeant for only one year, and, in making the designation, Moskowitz did not solicit applications or conduct interviews of interested sergeants. See Second Am. Compl. ¶ 33.  Plaintiff contends that Moskowitz designated McManus to the position in contravention of Moskowitz's own promotion guidelines,  see Plf. Ex. P,[9] and as a way to by-pass her for the promotion.

Defendant contends that Moskowitz's designation of McManus to Detective Sergeant was in keeping with § 37-14 of the Niskayuna Town Code,[10] and that Moskowitz chose McManus for the position because of McManus's leadership ability, his ability to investigate, and because officers respected him and often went to him with their questions.  Def.  L. R.  7.1 Stat.  ¶¶ 25 -26.

---

[9] Chief Moskowitz issued a General Order on March 9, 2006 that set forth the procedure for all non-civil service promotions. This required notification of a position opening, solicitation of applications for the position, and interviews of all candidates by a panel.  Plf. Ex. P.

[10] Defendant contends that § 37-14 of the Niskayuna Town Code allows the Chief to designate the commander of the Detective Division without posting the position or conducting interviews, and claims that Moskowitz followed § 37-14 in making this designation.  See  Def.  L. R.  7.1 Stat. ¶ 24; Moskowitz Dep., pp. 254 - 255.  However, Defendant does not provide a copy of § 37-14, and Plaintiff asserts that even if the Town Code allowed for appointments without interviews, the Town Code is overridden by the Chief's General Order.

IV.     **DISCUSSION**

    <u>**a.**</u>    <u>**Timely EEOC Charge & N.Y. Town Law § 67 Notice of Claim**</u>

    Defendant argues that Plaintiff's Title VII and New York State Human Rights Law hostile work environment claims, and her federal and state claims alleging discriminatory failure to promote in 1999 and 2001, must be dismissed because they were not included in the November 16, 2005 EEOC charge or in a timely New York Town Law § 67 Notice of Claim.

          **1.**    **Title VII Claims**

    An aggrieved employee wishing to bring a Title VII claim in federal court for conduct that occurred in New York must first exhaust administrative remedies by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights within 300 days of the alleged discriminatory act or acts.  <u>See</u> 42 U.S.C. § 2000e *et seq*.; <u>Ledbetter v. Goodyear Tire & Rubber Co., Inc.</u>, — U.S. - - - - , 127 S. Ct. 2162, 167 L. Ed.2d 982, 2007 WL 1528298, at *4 (May 29, 2007); <u>Williams v. N.Y. City Hous. Auth.</u>, 458 F.3d 67, 69 (2d Cir. 2006).  The statutory filing period is "analogous to a statute of limitations."  <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 712 (2d Cir.1996).

    "The requirement that administrative remedies be exhausted is designed 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'"  <u>White v.  N.Y.C. Dept.  Of Educ.</u>, 2008 WL 4507614 (E.D.N.Y. Sept.  30, 2008)(*quoting* <u>Stewart v. United States Immigration & Naturalization Serv.</u>, 762 F.2d 193, 198 (2d Cir.1985) *and citing* <u>Butts v. City of New York Dep't of Hous. Pres. & Dev.</u>, 990

F.2d 1397, 1401 (2d Cir.1993), *superseded on other grounds by* Hawkins v. 1115 Legal

Serv. Care, 163 F.3d 684 (2d Cir. 1998)).  A district court may only hear Title VII claims

that were included in a timely EEOC charge or that are "reasonably related" to the

discrimination alleged in the EEOC charge.  Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir.

2003);  White, 2008 WL 4507614 at * 2.

### A.      1999 and 2001 Failure to Promote Claims

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are

related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a

new clock for filing charges alleging that act.  The charge, therefore, must be filed within

the 180- or 300-day time period after the discrete discriminatory act occurred." National

R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072 (2002).

Failure to promote claims are discrete acts and, therefore, an administrative claim must be

filed within 300 days of the complained-of act when the acts occur in New York. Id.; see

also Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004)("The law is clear that

termination and promotion claims may not be based on discrete acts falling outside the

limitations period.").

There is no dispute that Plaintiff's EEOC charge was timely filed relative to the

2005 non-promotion decision.  However, inasmuch as Plaintiff did not file an

administrative claim within 300 days of either the 1999 or 2001 non-promotion decisions,

her Title VII claims relative to these occurrences must be dismissed.

### B.      Title VII Hostile Work Environment Claim

Plaintiff's November 16, 2005 EEOC charge makes no explicit reference to a

gender-based hostile work environment claim. Thus, the Court can hear the claim only if it

is "reasonably related" to her claim of discriminatory failure to promote.

> This Circuit has recognized that a claim is considered reasonably related if
> the conduct complained of would fall within the scope of the EEOC
> investigation which can reasonably be expected to grow out of the charge
> that was made.  In this inquiry, the focus should be on the factual allegations
> made in the EEOC charge itself, describing the discriminatory conduct about
> which a plaintiff is grieving. The central question is whether the complaint
> filed with the EEOC gave that agency adequate notice to investigate
> discrimination on both bases. The reasonably related exception to the
> exhaustion requirement is essentially an allowance of loose pleading and is
> based on the recognition that EEOC charges frequently are filled out by
> employees without the benefit of counsel and that their primary purpose is to
> alert the EEOC to the discrimination that a plaintiff claims she is suffering.

Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008)(internal

citations, alterations, and quotations marks omitted)).

Plaintiff's EEOC charge focused exclusively on the 2005 non-promotion decision.

She alleges in the charge that the complained-of discrimination occurred on a single day –

September 27, 2005  - the day that she was passed over for promotion. Plaintiff did not

check the boxes in the Intake Questionnaire alleging harassment, nor did she indicate that

there was an ongoing course of gender-based harassment at the workplace or allege any

facts suggesting a hostile work environment.

While Plaintiff notes in the EEOC charge that she had been passed over for

promotion on two prior occasions, these references would certainly appear to a

reasonable EEOC investigator to be included as background information supporting her

2005 non-promotion claim, not as a complaint of gender-based harassment.  Indeed, it is

clear from the EEOC's conclusions that the investigation concerned only a claim of

gender-based promotion, and not whether a gender-based hostile work environment

14

existed.  Further, generalized assertions, such as that "women suffer blatant

discrimination as male colleagues and supervisors alike, treat women different from their

male counterparts;" "that 'women have a difficult time 'fitting in' to' men's roles;" and "that

women and men who perform the same assignment and have the same issues/problems

are treated differently," have been held to be inadequate to define the scope of the EEOC

investigation and serve as the predicate for a sexual harassment claim in a federal

lawsuit. Flemming v.  Verizon N.Y., Inc., 419 F. Supp.2d 455, 464 (S.D.N.Y. 2005)(*citing*

Butts, 990 F.2d at 1403 ("Were we to permit such vague, general allegations, . . . such

allegations would become routine boilerplate and Title VII's investigatory and mediation

goals would be defeated.")). Thus, Plaintiff's references to the two prior non-promotion

decisions, even if intended as a synopsis of the hostile treatment she suffered in the

workplace, were insufficient to direct the agency's investigation toward a hostile work

environment claim.

Simply stated, Plaintiff's EEOC charge did not give the agency adequate notice to

investigate a claim of gender-based hostile work environment.  Consequently, she did not

preserve her hostile work environment claim in the EEOC charge because the claim is not

reasonably related to the 2005 non-promotion claim. See Fleming, 419 F. Supp.2d at 464

(EEOC charge making general allegations of discrimination "did not preserve . . . hostile

work environment claim [because the charge] makes no reference to a sexually hostile

work environment."); Little v. Nat'l Broad. Co., Inc., 210 F. Supp.2d 330, 375

(S.D.N.Y.2002)(dismissing race discrimination and harassment claims because "[t]here

are no descriptions of racial harassment or racial discrimination and, in fact, no mention of

race at all" in the charge alleging retaliation); Giliani v. Nat'l Ass'n of Sec. Dealers, Inc.,

1997 WL 473383, at *5 (S.D.N.Y. Aug. 19, 1997) (dismissing race discrimination and hostile work environment claims where EEOC charge included only "general and conclusory race discrimination and harassment claims"); see also White, 2008 WL 4507614, at * 3 ("While the 'reasonably-related' exception allows for 'loose pleading,' it does not encompass claims based on an entirely different type of discrimination from what was alleged in the initial EEOC charge, and courts have recognized that racial discrimination charges typically are not 'reasonably related' to an EEOC complaint formally alleging only gender discrimination."); Scott v. N.Y.C. Dept. of Corr., 2007 WL 4178405, at * 7 (S.D.N.Y. Nov. 26, 2007)("This case thus forms part of a long line of cases in which administrative charges suggesting that an adverse action was motivated exclusively by one kind of discrimination did not support a later assertion that a different motivation was the basis for the adverse action."). Accordingly, Plaintiff's Title VII gender-based hostile work environment claim must be dismissed.

## 2. State Law Claims

In order to maintain a state law claim against a municipal Defendant, a plaintiff must file a Notice of Claim, or its functional equivalent, within 90 days of the accrual of the claim. See N.Y. Town L. § 67. "Defendant concedes that the service on a municipality of a complaint with the EEOC within 90 days from an occurrence can be interpreted to serve the purpose of a Notice of Claim." Def. Reply Mem. L. p. 10. However, for the reasons discussed above, the November 16, 2005 EEOC charge only put Defendant on notice of the claims arising from the September 27, 2005 non-promotion decision. The EEOC charge was not timely relative to Plaintiff's 1999 and 2001 non-promotion claims, and it did not put the employer on notice of Plaintiff's hostile work environment claim.

16

Consequently, these state law claims must also be dismissed.

> **b.**   **Failure to Promote**

Plaintiff's 2005 failure to promote claim is analyzed under the McDonnell Douglas test. Levitant, 2008 WL 5273992, at * 12.  To establish a *prima facie* case of unlawful discrimination, Plaintiff must show that  that: (1) she is a member of a protected category; (2) she applied for promotion to an available position; (3) she was qualified for the position; and (4) she was rejected under circumstances that give rise to an inference of discrimination. Id. (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000)). The burden of establishing a  *prima facie* case of employment discrimination is "minimal" or  "*de minimis.*" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

Plaintiff meets her burden of establishing a *prima facie* case of discrimination as to the 2005 non-promotion.  She obtained the highest score on the most recent lieutenant's civil service examination yet the employer promoted a male sergeant who did not take this examination.[11]  While there is a dispute as to whether she was the best candidate for the position, there is no dispute that she was qualified for it.  An inference of discrimination arises from the fact that the employer elected to disregard the most recent examination scores and make a provisional appointment of a male who did not take that examination. See Zimmermann, 251 F.3d at 381 ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of

---

[11] Although not argued by Defendant, and perhaps not considered in connection with the 2005 promotion, Firminski took the 2002 lieutenant's civil service examination and scored higher than Plaintiff on that examination.

discrimination at the *prima facie* stage of the Title VII analysis."); Gomez v. Pellicone, 986 F. Supp. 220, 228 (S.D.N.Y.1997) ("An inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications [ ] or if the position was filled by someone not a member of plaintiff's protected class.").

Having established a *prima facie* case of discrimination, the burden shifts to the employer to present a legitimate, nondiscriminatory reason for the failure to promote Plaintiff. Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). "This burden is one of production, not persuasion; it can involve no credibility assessment. . . . [If the defendant meets] this burden by offering admissible evidence sufficient for the trier of fact to conclude that [the plaintiff] was [not promoted] because of [a legitimate, nondiscriminatory reason] . . . . the McDonnell Douglas framework - with its presumptions and burdens - disappear[s] . . . and the sole remaining issue [is] discrimination vel non." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000)(internal quotations, citations and alterations omitted).

Defendant maintains that Plaintiff was not promoted to lieutenant in 2005 because, in the Chief's view, she did not possess the leadership qualities necessary for the position.[12] This satisfies Defendant's burden, thereby shifting the burden back "to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Patterson, 375

---

[12]Based on this assertion, and on the facts of the promotion process in the Department as set forth by the parties, it is a reasonable inference that the Town Board invariably followed the Chief's recommendation as to appointments and promotions thus making the Chief the relevant decision maker.

F.3d at 221 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.

Ct. 1089, 67 L .Ed.2d 207 (1981)).  Although the presumption of discrimination now drops

from the case, the "trier of fact may still consider the evidence establishing plaintiff's *prima*

*facie* case 'and inferences properly drawn therefrom . . .  on the issue of whether the

defendant's explanation is pretextual.'"  Reeves, 530 U.S.  at 142-43 (quoting Burdine,

450 U.S. at 255 n. 10).  However, "[t]o get to the jury, '[i]t is not enough . . .  to disbelieve

the employer; the fact finder must [also] believe the plaintiff's explanation of intentional

discrimination.'" Weinstock, 224 F.3d at 42 (quoting St. Mary's, 509 U.S. at 519).  "The

plaintiff's opportunity to demonstrate that the employer's proffered reason was false now

merges with her ultimate burden to persuade the trier of fact that she has been the victim

of intentional discrimination (*i.e*., that an illegal discriminatory reason played a motivating

role in the adverse employment decision)."  Bickerstaff v. Vassar College, 196 F.3d 435,

446-47 (2d Cir. 1999)(citations omitted); see also Reeves, 530 U.S.  at 142-43 (Plaintiff

bears the burden of demonstrating that the defendant's reasons are a pretext for a racial

motivation for its actions).

Plaintiff's claim of discrimination is based largely upon her theory that she was

better qualified than Fiminski.  She premises this upon her assessment of Firminski's

"horrendous disciplinary record."  Plaintiff seemingly discounts the role that leadership

style (which she concedes is different between her and Firminski) played in the promotion

decision.  From this, she concludes that gender must have been the deciding factor.

However, Plaintiff's "feelings and perceptions of being discriminated against are not

evidence of discrimination." <u>Bickerstaff</u>, 196 F.3d at 456(citation omitted);  <u>see id.</u> at 448;[13]

<u>Richardson v. New York State Dep't, of Correctional Service</u>, 180 F.3d 426, 447 (2d Cir.

1999)(affirming summary judgment for employer where employee offered only her own

general claim of discrimination to show that the employer's legitimate reason for

terminating her was pretextual).

Further, it is well-settled law that in employment discrimination cases, "the court

must respect the employer's unfettered discretion to choose among qualified candidates. .

. .  Our role is to prevent unlawful hiring practices, not to act as a 'super personnel

department' that second guesses employers' business judgments." <u>Byrnie v. Town of

Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 103 (2d Cir. 2001).  As the Second Circuit recently

stated,

> [w]here gender discrimination claims are predicated on the employer's failure
> to promote the plaintiff, we must consider that "the employer has discretion
> to choose among equally qualified candidates, provided the decision is not
> based upon unlawful criteria. The fact that a court may think that the
> employer misjudged the qualifications of the applicants does not in itself
> expose him to Title VII liability, although this may be probative of whether the
> employer's reasons are pretexts for discrimination." <u>Tex. Dep't. of Cmty.
> Affairs v. Burdine</u>, 450 U.S. 248, 259, 101 S. Ct. 1089, 67 L. Ed.2d 207
> (1981).

<u>Komoroski v. Dept. of Consumer Protection</u>,  2008 WL 4876832, at *1 (2d Cir. Nov. 12,

---

[13] As indicated in <u>Bickerstaff</u>, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of
> discrimination and evidence that gives rise to mere speculation and conjecture.   This
> undertaking is not one of guesswork or theorization.   After all, an inference is not a suspicion
> or a guess.   It is a reasoned, logical decision to conclude that a disputed fact exists on the
> basis of another fact that is known to exist. Thus, the question is whether the evidence can
> reasonably and logically give rise to an inference of discrimination under all of the
> circumstances.

<u>Bickerstaff</u>, 196 F.3d at 448 (internal quotation marks and citations omitted).

2008)(unpublished decision).  Plaintiff must point to some concrete evidence that gender played some role the decision in order to avoid summary judgment.  See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)(A party opposing a properly supported motion for summary judgment may not rest upon conclusory allegations or unsubstantiated speculation.).

Plaintiff's concessions that she has a "laid back" leadership style and that she conducted herself in manner that caused the Chief and others in the Department to lose respect for her severely weakens, if not ultimately defeats, her claim given the business judgment afforded an employer.  However, the Court's role on summary judgment is only to discern whether a material question of fact exists that might lead to a favorable verdict for the non-movant. Plaintiff's claim survives under this rubric.

Although the circumstances of the 1999 and the 2001 non-promotion and the overall treatment of women in the Department cannot form the bases of independent discrimination claims, they are part of the totality of circumstances from which intent and motive might be discerned.   Because Plaintiff had been repeatedly past over for promotion by males with less seniority or lower test scores, and because women officers were supposedly treated more harshly than male officers in the Department, a reasonable fact finder could conclude that a gender-bias existed in the Department and that this bias was a factor in the 2005 promotion decision.  When combined with the fact that Plaintiff scored the highest on the 2004 lieutenant's civil service examination but that Chief Moskowitz decided to recommend a male who did not take that examination, a reasonable fact finder could conclude that the employer's stated reason of "leadership qualities" was merely a pretext for discrimination.  See Norris v. Metro-North Commuter R.R. Co., 522 F.

21

Supp.2d 402, 409 (D. Conn. 2007) ("Because 'departures from procedural regularity [may]

raise a question as to the good faith of the process,' and because the re-posting was

apparently at odds with prior Metro-North practice, there is an issue of material fact as to

whether a fact-finder could infer discriminatory intent from this failure to promote.")(quoting

Stern v. Trustees of Columbia Univ., 131 F.3d 305, 313 (2d Cir. 1997) (interior quotation

marks and alteration omitted)).  Thus, inasmuch as a reasonable fact finder could

conclude that consideration of Plaintiff's gender was a motivating factor in her 2005 non-

promotion, Defendant's motion on this ground must be denied.

> **c.**   **Retaliation**

"Retaliation claims are [also] governed by the burden-shifting framework set out by

the Supreme Court in McDonnell Douglas Corp. v. Green."  Walker v. New York City

Transit Auth., 2001 WL 1098022, at * 7 (S.D.N.Y. Sept. 19, 2001).  To establish a *prima*

*facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in protected

activity; (2) the employer was aware of Plaintiff's participation in the protected activity; (3)

the employer took adverse action against Plaintiff; and (4) a causal connection exists

between the Plaintiff's protected activity and the adverse action taken by the employer.

Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003).

Plaintiff engaged in protected activity that the employer was aware of when she

filed her EEOC charge and when she filed the instant action. See Richardson v. N.Y.

State Dep't of Corr. Serv., 180 F.3d 426, 446-47 (2d Cir.1999), *abrogated on other*

*grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006) (holding

abusive acts within one month of receipt of deposition notices may be retaliation for

initiation of lawsuit one year earlier). Thus, the first and second prongs are amply

supported by the record.  Plaintiff also claims that the employer took adverse action

against her when, on May 25, 2007, she was passed over for a promotion to the position

of Detective Sergeant.[14]  This satisfies the third prong of the *prima facie* case. See

White,126 S. Ct. at  2415 (Requiring only a showing "that a reasonable employee would

have found the challenged action materially adverse, which in this context means it well

might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.")(internal citation and punctuation omitted); Phillips v. Bowen, 278 F.3d

103, 109 (2d Cir. 2002)("Adverse employment actions include . . . refusal to promote . . .

.") .

      The fourth prong of the *prima facie* case requires that Plaintiff establish a causal

connection between the protected activity and adverse action.  There is no direct proof

that the May 25, 2007 non-promotion decision was made in retaliation for Plaintiff's earlier

charge of discrimination or because of the instant lawsuit.  However, "[t]he causal

connection needed for proof of a retaliation claim can be established indirectly by showing

that the protected activity was closely followed in time by the adverse action."  Cifra v.

---

[14]Plaintiff also alleges that Moskowitz "committed sexual harassment while on duty during 2007 by
telling 'off-color' jokes." Plt. L. R. 7.1 Stat., ¶ 1(g).  It is unclear whether she intends this as a part of her
retaliation claim, or part of her hostile work environment claim.  Assuming that the reference is intended to
support the retaliation claim, it insufficient because the seemingly isolated event does not support the
proposition that the alleged harassment reached "critical mass." See Deters v. Lafuente, 368 F.3d 185, 189
(2d Cir. 2004)("With respect to hostile work environments, we have stated that '[o]ur precedent allows a
combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they
reach a critical mass.'")(quoting Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)).

      The evidence also does not support a hostile work environment claim.  The cited-deposition pages
reveal that Moskowitz admitted that he might have made off-color jokes to males in the Department in 2007
that the *males* might have construed sexually harassing, see  Moskowitz Dep.  pp.  50-52, but there is no
evidence that the jokes were directed at, heard by, or concerned Plaintiff or women in general. Id.

23

General Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001)(quotation marks omitted); see Bennett v. Goord, 343 F.3d 133, 139 (2d Cir. 2003)("[W]here . . . circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required.").  The "circumstantial evidence may be . . . sufficient to raise a genuine issue of material fact to preclude a grant of summary judgment." Gayle v. Gonyea, 313 F. 3d 677, 684 (2d Cir. 2002).

While the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal [ ] right and an allegedly retaliatory action," Gorman-Bakos v. Cornell Coop. Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001) (quotation marks omitted and citation), case law "uniformly hold[s]" that the temporal link "must be very close."  Clark Co. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).

Here, the alleged retaliatory act occurred on May 25, 2007, approximately 18 months after the employer learned that Plaintiff had complained to the EEOC but approximately two months after Plaintiff filed in the instant lawsuit.  The time between filing the instant lawsuit and alleged retaliatory act is close enough to satisfy the fourth element of the *prima facie* case.  See Levitant, 2008 WL 5273992, at * 18.[15]  Thus, the

---

[15] In Levitant , the District Court wrote that

courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." Cunningham v. Consol. Edison, Inc., No. 03 Civ. 3522, 2006 U.S. Dist. LEXIS 22482, at *55-56, 2006 WL 842914 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the

(continued...)

*prima facie* case is established thereby shifting the burden to Defendant to articulate a non-discriminatory reason the for Plaintiff's non-promotion.

Similar to the reason articulated for the 2005 non-promotion decision, Defendant asserts that the 2007 decision was based upon considerations of, *inter alia*, leadership qualities which Plaintiff was lacking in.  This articulation is sufficient to switch the burden back to Plaintiff to establish that the employer retaliated against her for her protected activity.

Like the 2005 claim, the retaliation claim is based on little more than Plaintiff's perception of discrimination.  However, given that the Chief may have disregarded the then-established policy for promotions, a reasonable fact finder could conclude that gender-animus motivated the Chief's decision to appoint McManus to the Detective Sergeant position without interviews or applications from interested sergeants.  This question of material fact defeats the motion for summary judgment on this claim.  Norris, 522 F. Supp.2d at 409.

**V.      CONCLUSION**

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.  The motion is granted **DISMISSING**

---

[15](...continued)
entire record. See, e.g., Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir.1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); see also Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed.2d 345 (2006)(holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier).

2008 WL 5273992, at * 18.

Plaintiff's federal and state claims of gender-based sexual harassment and discriminatory failure to promote in 1999 and 2001.  The motion is denied as to Plaintiff's federal and state claims of gender-based failure to promote in 2005, and as to her Title VII retaliation claim based upon a 2007 failure to promote.

**IT IS SO ORDERED**.

DATED:   January 29, 2009

Thomas J. McAvoy
Senior, U.S. District Judge